IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| CISSY THUNDERHAWK; WAŠTÉ WIN YOUNG; REVEREND JOHN FLOBERG; and JOSÉ ZHAGÑAY on behalf of themselves and all similarly-situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MORTON, NORTH DAKOTA; SHERIFF KYLE KIRCHMEIER; GOVERNOR DOUG BURGUM; FORMER GOVERNOR JACK DALRYMPLE; DIRECTOR GRANT LEVI; SUPERINTENDENT MICHAEL GERHART JR; TIGERSWAN LLC; and DOES 1 to 100,<br><br>Defendants. | Civil No.: 1:18-cv-00212 |

### ORDER GRANTING MOTION TO DISMISS BASED UPON QUALIFIED IMMUNITY

### INTRODUCTION

[¶1]   THIS MATTER comes before the Court on a remand from the Eighth Circuit Court of Appeals. Doc. Nos. 155, 157. On September 25, 2020, Defendants Governor Doug Burgum, Former Governor Jack Dalrymple, Director Grant Levi, Superintendent Michael Gerhart, and Sheriff Kyle Kirchmeier ("Interlocutory Defendants")[1] filed Interlocutory Appeals to the Eighth Circuit Court of Appeals, arguing this Court erroneously denied their motions to dismiss based on the qualified immunity defense. Doc. Nos. 104, 105. The Interlocutory Defendants asserted this

---

[1] This motion does not affect the remaining claims by the Plaintiffs against Defendants TigerSwan and Morton County.

Court failed to answer both prongs of the qualified immunity defense analysis, that is 1) whether a constitutional violation was present and 2) whether the law was clearly established so that a reasonable official would know he or she was violating the constitutional rights of another. On July 5, 2022, the Eighth Circuit acknowledged this Court determined the Plaintiffs[2] had alleged enough facts to overcome the first prong but remanded the case back to this Court to more fully consider the second prong. Doc. No. 155-1.

[¶2]   On July 20, 2022, the Interlocutory Defendants and Plaintiffs jointly requested the Court allow them the opportunity to provide supplemental briefing on the question of qualified immunity. Doc. No. 156. The Court granted that request, and supplemental briefs were filed by the Interlocutory Defendants on August 31, 2022, and Plaintiffs on October 5, 2022. Doc. No. 164. For the reasons explained below, the Interlocutory Defendants' Motions to Dismiss based upon Qualified Immunity are **GRANTED** and Count 1 of the Complaint against the Interlocutory Defendants is **DISMISSED with prejudice**.

## DISCUSSION

[¶3]   The Court previously provided the relevant background for the current issues under consideration and will not reiterate them here. See Doc. No. 88, ¶¶ 5-35. The lynchpin of the remaining analysis is whether the nine-mile stretch of Highway 1806 and the Backwater Bridge was clearly established at the time of the events alleged in the Complaint as a traditional public forum. A secondary issue is whether such the closure under the circumstances of this case was clearly established to violate the Plaintiffs' rights under the First Amendment. Mustering a significant number of cases, the Plaintiffs argue there is a robust consensus among the persuasive

---

[2] The term "Plaintiffs" refers collectively to Cissy Thunderhawk, Waŝté Win Young, Reverend John Floberg, and José Zhagñay.

precedent to clearly establish that closing Highway 1806 and the Backwater Bridge violated the Plaintiffs' constitutional rights. The Interlocutory Defendants argue these aspects were not clearly established. For the reasons discussed below, the Court agrees with the Interlocutory Defendants.

[¶4]   "Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." Ferguson v. Short, 840 F.3d 508, 510 (8th Cir. 2016). "The determination of whether qualified immunity is applicable in given circumstances is one of 'objective reasonableness.'" Herts v. Smith, 345 F.3d 581, 585 (8th Cir. 2003). The issue is not "whether the defendant acted wrongly, but whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right." Id. (citing Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002)).

[¶5]   The Court must examine the second prong of the qualified immunity analysis, namely, "[whether] the right was clearly established at the time of the deprivation." Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012). The defendants bear the burden of proof on this affirmative defense, id., "qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" Watson v. Boyd, 2 F.4th 1106, 1110 (8th Cir. 2021) (citation omitted). However, to defeat an asserted qualified immunity defense, the plaintiffs have the burden to show that their asserted right was clearly established at the time of the alleged violation. Quraishi v. St. Charles Cty., Missouri, 986 F.3d 831, 835 (8th Cir. 2021). At the motion to dismiss stage, defendants must show they are entitled to qualified immunity on the face of the complaint. Elder v. Gillespie, 54 F.4th 1055, 1063 (8th Cir. 2022); Baude v. Leyshock, 23 F.4th 1065, 1071 (8th Cir. 2022); Dadd v. Anoka County, 827 F.3d 749, 754 (8th Cir. 2016).

[¶6]  For the purposes of step two, "clearly established" means "[t]he 'contours of the right must be sufficiently clear that a reasonable official would [have understood] that what he was doing violates that right.'" Quraishi, 986 F.3d at 835 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "This generally requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer['s] conduct in the specific circumstances at issue." Martin v. Turner, 73 F.4th 1007, 1010 (8th Cir. 2023) (quotation marks omitted) (quoting Graham v. Barnette, 5 F.4th 872, 887 (8th Cir. 2021)). "We . . . look to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002). While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." White v. Pauly, 137 S. Ct. 548, 551 (2017) (citations omitted). In other words, when there is no directly controlling authority, courts look to whether there is "a robust 'consensus of cases of persuasive authority.'" Ashcrof v. al-Kidd, 563 U.S. 731, 741-42 (2011) (quoting Wilson v. Layne, 526 U.S. 603, 617 (2011)). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning so long as the unlawfulness is apparent." Dean v. Searcey, 893 F.3d 504, 518 (8th Cir. 2018), cert. denied, 139 S. Ct. 1291, 203 L. Ed. 2d 414 (2019).

[¶7]  The Court has already concluded the Amended Complaint alleges sufficient facts to show a constitutional violation of the Plaintiff's right to free speech. Doc. No. 88, ¶¶ 57-120. The question to be decided is whether the law was clearly established at the time (October 2016) that rendered a rural highway a traditional public forum for view-point expression, such that a reasonable officer under the circumstances would have understood the highway as such. While this Court concluded the Amended Complaint alleged sufficient facts to show a constitutional

violation, this does not mean the law was clearly established in October 2016. As noted by the Eighth Circuit, the closure occurred after a "significant skirmish between protestors and law enforcement officials." Doc. No. 155-1, p. 2. With that, the second question is whether it is clearly established by October 2016 for law enforcement to close a highway after a "significant skirmish" with protesters during the course of a tumultuous protest on a rural highway was unconstitutional viewpoint discrimination or a prior restraint on speech.

### I. Forum Status

[¶8]    The Parties discuss the applicability of Frisby v. Schultz, International Society for Krishna Consciousness, Inc. v. Lee (ISKCON), and United States v. Kokinda. The Plaintiffs contend these cases clearly establish all public roads are traditional public forums. The Defendants dispute this. The Court will review each in turn.

[¶9]    In Frisby v. Schultz, the appellees wanted to protest on the public streets of Brookfield, Wisconsin. 487 U.S. 474, 480 (1988). The Supreme Court noted it has "repeatedly referred to public streets as the archetype of a traditional public forum." Since time immemorial, "public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." Id. (quoting Hague v. CIO, 307 U.S. 496, 515 (1939). The Supreme Court ultimately rejected the contention that the public streets of Brookfield were not traditional public forums. Id. In discussing the status of public streets, the Supreme Court held "[n]o particularized inquiry into the precise nature of a specific street is necessary; all public streets are held in the public trust and are properly considered traditional public fora." Id. at 481.

[¶10]    Two years after Frisby, a plurality of the Supreme Court issued its opinion in Kokinda. There, the Supreme Court had to determine whether the United States Postal Service ban on soliciting alms and contributions on its property violated the First Amendment. Kokinda, 497 U.S.

720, 722 (1990). Writing for the plurality, Justice O'Connor concluded the regulation as enforced was valid under the First Amendment. Id. In reaching this conclusion, Justice O'Connor wrote, "[t]he mere physical characteristics of the property cannot dictate forum analysis." Id. at 727. According to Justice O'Connor, "[t]he postal sidewalk at issue does not have the characteristics of public sidewalks traditionally open to expressive activity." Id. Justice Kennedy agreed with Justice O'Connor's conclusion; however, he expressed a differing opinion as to why. Justice Kennedy concluded the distinction between the Post Office sidewalk being a public or non-public forum. Id. at 738. Justice Kennedy concluded the regulation at issue was nevertheless valid under the traditional public forum analysis. Id. Writing for the dissenters, Justice Brennan concluded the sidewalk in question was a traditional public forum. Id. at 740.

[¶11]   Finally, in ISKCON, the Supreme Court was tasked with determining "whether an airport terminal operated by a public authority is a public forum." 505 U.S. 672, 674 (1992). The port authority in ISKCON prohibited "repetitive solicitation of money or distribution of literature" inside the airport terminal but permitted such activities on the sidewalk outside the airport. Id. at 675-76. In deciding the airport terminal was not a traditional public forum, the Supreme Court first looked to the history of airport terminals and concluded, "the traditional of airport activity does not demonstrate that airports have historically been made available for speech activity. Nor can we say these particular terminals, or airport terminals generally, have been intentionally opened by their operators to such activity." Id. at 687.

[¶12]   None of these cases put the officers in this case on notice their activities were unconstitutional as required under the "clearly established" prong of qualified immunity analysis. Frisby dealt with determining whether the city streets of Brookfield, Wisconsin, were traditional public forums. Frisby did not determine the status of a state highway in a sparsely populated rural

area. Kokinda, was a case involving a sidewalk outside of a United States Post Office building. Even if the dissent was correct in concluding the sidewalk was a traditional public forum, that would not have an impact on whether it was clearly established that the highway was a traditional public forum to the extent a reasonable officer would know his or her conduct violated the constitution in this case. ISKCON's review of the historical significance of airport terminals, while important in determining whether a constitutional violation has occurred, did not clearly establish the highway at issue in this case was a traditional public forum at the time the incidents occurred. Ultimately, these cases are helpful for the Court in determining whether Highway 1806, the Backwater Bridge, and the curtilage at issue are a traditional public forum. But they do not show it was clearly established at the time of the incidents that the highway and bridge were traditional public forums.

[¶13]   Indeed, neither party has cited to any case that directly establishes closing a rural highway such as the Backwater Bridge on Highway 1806 in Morton County, North Dakota, during a tumultuous protest violates the protestor's First Amendment rights to free speech. While this Court may have concluded the facts alleged in the Amended Complaint were sufficient to state a claim for a constitutional violation, it did so because the Amended Complaint contained sufficient allegations that the area at issue was closed after the Interlocutory Defendants knew the protestors were using the area for speech. However, not a single case cited by the Plaintiff or in the Court's prior order clearly establishes rural highway 1806, Backwater Bridge, its curtilage, and the nine (9) miles stretch of road are, without a doubt, a traditional public forum in October 2016. The Court simply concluded the Complaint alleged sufficient facts at that time to conclude the area— a public highway— was a traditional public forum. Despite that holding, the Court now concludes the law was not clearly established in October 2016 to put the "constitutional question beyond

debate," White, 137 S. Ct. at 551, such that a reasonable officer would have known his conduct violated the constitution.

[¶14]   Plaintiffs cite approximately thirty-one (31) cases to support their argument that the law was clearly established at the time of the events in this case that "all roads"—including rural highways such as Highway 1806 and the Backwater Bridge—are traditional public forums. Doc. No. 164, pp. 13-15. These cases are distinguishable from the present case.

[¶15]   For example, in Forsyth County v. Nationalist Movement, 505 U.S. 123 (1992), the Supreme Court had to determine whether an ordinance allowing a government administrator to adjust the fee or assembling or parading through a municipality violated the First Amendment. 505 U.S. at 124. The demonstrators mounted a facial challenge to the ordinance. Id. at 130. In analyzing the issue, the Court noted the town streets were "the archetype of a traditional public forum." Id. (quoting Frisby, 487 U.S. at 480)). This case did not discuss highways or bridges in sparsely populated rural areas similar to Highway 1806 and the Backwater Bridge but instead focused on the constitutionality of the city ordinance.

[¶16]   In McCullen v. Coakley, 573 U.S. 464, 469 (2014), the Supreme Court determined whether a city ordinance prohibiting pro-life advocates from approaching anyone within thirty-five (35) feet of an abortion clinic from attempting to dissuade them from obtaining an abortion was constitutional. In holding such an ordinance is unconstitutional, the Supreme Court reiterated the government's ability to restrict speech in areas "with the traditionally open character of public streets and sidewalks." This case did not discuss highways or bridges in sparsely populated rural areas similar to Highway 1806 and the Backwater Bridge but focused on the constitutionality of the city ordinance.

[¶17]   In <u>Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge</u>, 775 F.3d 969 (8th Cir. 2014), the Eighth Circuit had to decide whether a city ordinance that prohibited entering a roadway to distribute anything to vehicle occupants, but permitted to distribute to a vehicle's occupant if the vehicle is parked next to the road was constitutional. <u>Id.</u> at 972. In finding the statute was constitutional, the Eighth Circuit noted the parties agreement that the streets of Desloge were a traditional public forum. <u>Id.</u> at 974. This case did not discuss highways or bridges in sparsely populated rural areas similar to Highway 1806 and the Backwater Bridge but focused on the constitutionality of the city ordinance.

[¶18]   In <u>Tucker v. City of Fairfield, Ohio</u>, 398 F.3d 457 (6th Cir. 2005), the Sixth Circuit had to determine whether the enforcement of a municipal ordinance against Tucker and members of his union for "their use of a rat balloon as part of demonstrations in a public right-of-way" was constitutional. <u>Id.</u> at 460. The public right of way was a roadway between Fairfield Ford plant and the Dixie Highway. <u>Id.</u> The Sixth Circuit concluded this right-of-way was a traditional public forum. <u>Id.</u> at 463. This case did not discuss highways or bridges in sparsely populated rural areas similar to Highway 1806 and the Backwater Bridge but focused on the constitutionality of the city ordinance.

[¶19]   This is a sampling of cases relied upon by the Plaintiffs claiming a "robust consensus" of cases clearly established Highway 1806 and the Backwater Bridge as traditional public forums. The Court has reviewed each of the cases cited by the Plaintiffs. Looking to the totality of the cases, the Court concludes they are not a "robust consensus of persuasive authority" on the clearly established issue presently before the Court. Not a single case discusses highways or bridges in sparsely populated rural areas similar to Highway 1806 and the Backwater Bridge. These cases, therefore, do not show it is beyond debate that Highway 1806 and the Backwater Bridge under the

unique circumstances of this case are traditional public forums such that a reasonable officer would have notice that the closure of the roads may violate the First Amendment. See White, 137 S. Ct. at 551 (noting when there is no binding precedent, the law may be clearly established if the existing caselaw puts the question "beyond debate").

[¶20] Plaintiffs also claim seven (7) courts have held highways are traditional public forums. Id. at pp. 15-16. Like the previous cases discussed, each of the following cases are distinguishable from the present matter.

[¶21] In Lewis v. McCracken, 782 F.Supp.2d 702, 713 (S.D. Ind. 2011), the court held the sidewalks adjacent to a public highway were a traditional public forum. Importantly, the Court did not hold the public highway itself was a public forum. Nevertheless, the highway in Lewis was not a rural highway in a sparsely populated area.

[¶22] In Swagler v. Sheridan, 837 F.Supp.2d 509, 515, (D. Md. 2011), that court held the grassy shoulder along a highway in Harford County, Maryland, was a traditional public forum for free speech purposes. However, the protestors in Swagler specifically chose their protest location because "it received steady traffic flow and was similar to locations where the Tour had previously staged successful demonstrations." Id.

[¶23] In Frye v. Police Dept. of Kansas City, Mo., 260 F.Supp.2d 796, 799 (W.D. Mo. 2003), the Court held a "busy intersection" of two state highways constituted a traditional public forum. But the Frye court also noted, "[t]he First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others." Id. Nevertheless, the highway at issue in Frye was busy and the officers instructed the protestors not to display certain signs because "they were distracting drivers and creating a safety hazard." Id. at 800. As such, the officers were entitled to qualified immunity in Frye.

[¶24]   In Lytle v. Brewer, 77 F.Supp.2d 730, 736 (E.D. Va. 1999), the court held a pedestrian walkway that passed over a "major roadway, Interstate 64" was a traditional public forum. Importantly, the Court found "a person had a clearly established right to protest their individual beliefs on traditional public forum, **such as sidewalks and pedestrian crosswalks**, without fear that their actions would be subject to the criminal confines of a state-enacted loitering law." Id. at 739 (emphasis added). The issue in Lytle was not whether individuals could protest on Interstate 64. Rather, it centered on the sidewalks or crosswalks over Interstate 64. Id.

[¶25]   In Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998), the Eleventh Circuit held a street corner at a busy intersection constituted a traditional public forum for first amendment purposes. The Eleventh Circuit did not hold the busy street itself was a traditional public forum, only that the sidewalks at the intersection were clearly established as a traditional public forum. Id.

[¶26]   In Knights of Ku Klux Klan v. Arkansas State Highway and Transp. Dept., 807 F.Supp. 1427, 1435 (W.D. Ark. 1992), the court held "public highway rights-of-way have become places where 'speech' of one type or another is engaged in." The court in Knights of Ku Klux Klan did not distinguish between highways in rural or populated areas, but the case involved the Adopt-A-Highway program and the Ku Klux Klan's desire to erect a sign in an Arkansas ditch, not to protest upon the highway itself. Id. at 1430-31.

[¶27]   Finally, in Corral v. Montgomery Cty., 4 F.Supp.3d 739, 751 (D. Md. 2014), the court held "where there is a thoroughfare, a traditional public forum exists." But Corral dealt with policing of a sidewalk easement "integrated into the street grid." Id. It did not discuss closing a rural public highway to protestors after a major incident between law enforcement and protestors.

[¶28] The Plaintiffs have not cited to binding precedent that controls the outcome of the clearly established prong of qualified immunity under the circumstances of this case. Certain unique factors of this case drive the Court's conclusion. Contrary to every case cited by the Plaintiffs, the highway in this case, prior to the protest, was in a sparsely populated rural area with little traffic. It is so remote, travelers are more likely to see a white tail deer or a porcupine than a passerby on the highway. Plaintiffs cite a voluminous number of cases. However, those cases are factually different do not clearly establish that a rural highway in a sparsely populated county is a traditional public forum or that closing such a highway violated the constitutional rights of protestors to the extent that a reasonable officer under the circumstances would know closing the road would violate the protestors' constitutional rights. See Martin, 73 F.4th at 1010 (the clearly established prong " requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer['s] conduct in the specific circumstances at issue"). The question of the constitutionality of closing Highway 1806, the Backwater Bridge, and its curtilage is, therefore, not "beyond debate" See White, 137 S. Ct. at 551.

## II. Viewpoint Discrimination and Prior Restraint

[¶29]     Count 1 of the Amended Complaint essentially alleges viewpoint discrimination and prior restraint. Plaintiffs do not direct this Court to any authority clearly establishing officials are constitutionally prohibited from closing a highway after law enforcement and protestors had a "significant skirmish" with protestors. In other words, the law was not clearly established the Interlocutory Defendants actions in this case constituted viewpoint discrimination or a prior restraint.

[¶30] As to viewpoint discrimination, starting as early as 1972, it was settled law that "government may not grant the use of a forum to people whose views it finds acceptable, but deny

use to those wishing to express less favored or more controversial views." Police Dep't of City of Chicago v. Mosley, 408 U.S. 92, 96 (1972). Indeed, "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Id. In 1995, the Supreme Court held "[i]t is axiomatic that government may not regulate speech based on its substantive content or the message it conveys." Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 828 (1995). Indeed, in 2012, the Eighth Circuit explained content-based restrictions are "presumptively invalid." Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 686 (8th Cir. 2012). "Once a public forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." Mosley, 408 U.S. at 96. In 1083, the Supreme Court stated it "has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." Connick v. Myers, 461 U.S. 138, 145 (1983) (quoting NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982)).

[¶31] However, equally established by 2016 was that government restriction of speech—whether viewpoint or neutral—was not automatically unconstitutional. As explained by the Eight Circuit in 2012, content-based restrictions are subject to strict scrutiny while content neutral time, place, manner restrictions tested under intermediate scrutiny. Pehlps-Roper, 697 F.3d at 686. Content-based regulations "must be narrowly tailored to serve a compelling government interest." Id. Content-neutral restrictions "must be narrowly tailored to serve a significant government interest and allow for ample alternative channels for communication." Id. (citation and quotation marks omitted). By necessity, the answer to these questions depends upon the specific facts of each case.

[¶32] The Interlocutory Defendants are entitled to qualified immunity as to the claim for viewpoint discrimination. While Plaintiffs cite to cases to establish these general principles of law, Plaintiffs have not cited to any case or body of cases that establish the road closure under the unique and unprecedented circumstances of this case would fail strict or intermediate scrutiny. There are no cases involving the suppression of speech along a state highway in a sparsely populated rural area with a protest involving upwards of 10,000 protestors, most of which were peaceful, some of which were not, and shortly after the protestors and law enforcement were engaged in a "significant skirmish." The Plaintiffs have not pointed to any case that is factually similar to the present that establishes in 2016 the Interlocutory Defendants actions fail to meet strict scrutiny or intermediate scrutiny. See Martin, 73 F.4th at 1010 (the clearly established prong "requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer['s] conduct in the specific circumstances at issue"). As such, the Interlocutory Defendants are entitled to qualified immunity as to the viewpoint discrimination claim.

[¶33] As to prior restraint, it was established by October 2016 that "prior restraints on speech . . . are the most serious and least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976). Prior restraints may nevertheless be appropriate if it occurred for a valid reason "rather than a disguised impermissible purpose." United States v. Griefen, 200 F.3d 1256, 1262 (8th Cir. 2000). Prior restraints are subject to strict scrutiny "and are the form of regulation most difficult to sustain under the First Amendment." Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist., 200 F.3d 1128, 1134 (8th Cir. 1999).

[¶34] The Plaintiffs' prior restraint claim suffers a similar fate as their viewpoint discrimination claim. The Court previously concluded the Amended Complaint stated a claim for an unconstitutional prior restraint. However, similar to Plaintiffs' viewpoint discrimination claim,

Plaintiffs have not cited any case or body of case law with a similar factual scenario that would give the Interlocutory Defendants notice their conduct was unconstitutional. Likewise, Plaintiffs have not cited any cases that establish beyond debate that it was clearly established Interlocutory Defendants' actions as alleged here would necessarily fail to meet strict scrutiny. The Court concluded the Amended Complaint stated a claim the Defendants' actions allegedly failed to meet strict scrutiny. But the Court arrived at this conclusion after a thorough analysis of the law relating to prior restraints and none of the cases relied upon by this Court in making that determination were factually alike to the present case. Plaintiffs have failed to provide a factually similar case sufficient to support the clearly established prong of the qualified immunity analysis. See Martin, 73 F.4th at 1010 (the clearly established prong "requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer['s] conduct in the specific circumstances at issue"). As such, the Interlocutory Defendants are entitled to qualified immunity as to the prior restraint claim.

[¶35]   Indeed, looking at both viewpoint discrimination and prior restraint, the Court cannot overlook the unprecedented nature of this case. The unprecedent protest and surrounding circumstances alone is a strong indication that the Interlocutory Defendants "did not violate a 'clearly established' right" of the Plaintiffs as of October 2016. White v. Pauly, 580 U.S. 73, 80 (2017). Accordingly, the Interlocutory Defendants are entitled to qualified immunity on Count 1 insofar as it alleges viewpoint discrimination and prior restraint.[3] See Herts, 345 F.3d at 585

---

[3] The Court takes a moment to note the profound unfairness of applying qualified immunity at the Motion to Dismiss stage, particularly when government action is involved. By granting qualified immunity now, the Plaintiffs are deprived of their opportunity to probe the government's actions and reasons for their actions simply because there are no factually similar cases to the one presently before the Court. Permitting this case to go through discovery would not unnecessarily subject the Interlocutory Defendants to trial because a factual record would have been developed and the case likely decided on a complete record at the summary judgment stage. See Mitchell v. Kirchmeier,

(holding that in analyzing the clearly established prong of the qualified immunity analysis, look to "whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right").

## CONCLUSION

[¶36] Based upon the foregoing, the Court is unconvinced the law was clearly established to the point where the Interlocutory Defendants in this case were put on notice their conduct would violate the constitutional rights of the Plaintiffs. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). As such, the Court finds the Interlocutory Defendants are entitled to qualified immunity as it relates to the Plaintiffs First Amendment claims. Interlocutory Defendants' Motions to Dismiss based upon qualified immunity are, therefore, **GRANTED**. Count I of the Complaint as alleged against the Interlocutory Defendants is **DISMISSED with prejudice**.

[¶37] **IT IS SO ORDERED.**

DATED November 6, 2023.

_____
Daniel M. Traynor, District Judge
United States District Court

---

28 F.4th 888, 899 (8th Cir. 2022) (noting discovery in Bernini v. City of St. Paul, 665 F.3d 997 (8th Cir. 2012) revealed the allegedly "peaceful" protest at issue was contradicted by the undisputed evidence of the protestors intimidation, riotous behavior and police warnings to back up). Applying qualified immunity now allows the government to hide behind a very large shield. The public will not be able to determine the truth surrounding the circumstances alleged in this case because there will be no discovery. When important constitutional rights of United States citizens are involved, the government ought to be subject to transparency—even forced transparency through the discovery process of civil litigation. The result in this case is unfair to the Plaintiffs, it shrouds government action in darkness, but it is the required outcome based upon the law as it now stands.