IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Cissy Thunderhawk et al., | |
| Plaintiffs, | |
| vs. | Civil No.: 1:18-cv-00212 |
| County of Morton et al., | |
| Defendants. | |

## ORDER DENYING MOTIONS TO CERTIFY CLASS

[¶ 1]    THIS MATTER comes before the Court upon a Motion to Certify Class filed by Plaintiffs on April 11, 2025. Doc. No. 193. Defendants filed a Response on May 16, 2025. Doc. No. 199. Plaintiffs filed a Reply on May 30, 2025. Doc. No. 202. Plaintiffs attached new evidence to their Reply, Doc. Nos. 202-1–202-4. Defendants were allowed to file a Sur-reply, which they did on June 18, 2025. Doc. No. 204–05. For the reasons set forth below, Plaintiffs' Motion to Certify Class is **DENIED**.

### BACKGROUND

[¶ 2]    The Court previously detailed the background of this case. See Doc. No. 88, ¶¶ 5–35. The only remaining claim is a violation of the right to speak and assemble against the only remaining defendant Tigerswan LLC ("Tigerswan"). See Doc. Nos. 88, 168, 182. The Court will give a summary of the allegations against Tigerswan in the Amended Complaint.

[¶ 3]    In September of 2016, approximately 7,000–10,000 individuals protested the construction of the Dakota Access Pipeline ("DAPL"), residing on federally and tribally-owned lands. Doc. No.

- 1 -

44, ¶ 43. Some protestors became legal residents of the camps. Id. The protestors used Highway 1806 to assemble, pray, and speak in opposition to DAPL. Id. ¶ 2.

[¶ 4]    On October 24, 2016, Morton County and the NDDOT "closed a significant portion of Highway 1806 to the Tribe and its supporters," including from Fort Rice to Fort Yates. Id. ¶ 54. Government officials put up a barricade on and north of Backwater Bridge, which prevented travel past the bridge, but not onto the bridge from the camps. Id. ¶¶ 58, 66.

[¶ 5]    After DAPL construction in the area was completed, Highway 1806 was closed for an additional sixty-eight days until there was an "assurance no criminal activity will take place and federal law enforcement has been introduced into the protest camp to restore law and order." Id. ¶¶ 61, 72. During the time of the closure, DAPL, its employees, its contractors, and individuals not affiliated with the Tribe or its supporters who resided in the area, were permitted by State and Local Defendants to use the road for local traffic. The Plaintiffs contend the use included purposes related to expression. Id. ¶ 76. Protestors were prohibited from expressing their speech on the highway until it fully reopened on March 21, 2017. Id. ¶ 64.

[¶ 6]    Tigerswan was hired by Energy Transfer Partners and "coordinated and implemented all security and intelligence operations" for it. Id. ¶ 93. A Tigerswan Liaison Officer was installed "directly into the law enforcement Joint Operations Center." Id. ¶ 95. Tigerswan engaged in evidence collection and intelligence activities traditionally reserved for law enforcement. Id. ¶ 97. Tigerswan provided other support to law enforcement both in physical resources and sharing intelligence. Id. ¶¶ 96, 101. Plaintiffs allege "mischaracterizations" in Tigerswan's reports intended to and did "encourage the implementation and continued maintenance of excessive measures against the Tribe and its supporters, primarily including the road closure in question." Id. ¶ 101.

## DISCUSSION

[¶ 7]    Plaintiffs seek to certify a class consisting of:

> All persons residing in or visiting Morton or Sioux County between October 24, 2016 and March 21, 2017 who engaged in anti-Pipeline expression and were prevented from using any of the closed portion of Highway 1806 for conducting, or traveling to conduct, anti-Pipeline expression. In addition, the following are excluded from the class: (a) Defendants; (b) Dakota Access LLC and its affiliates for all relevant times; (c) any officers or employees of Dakota Access LLC and its affiliates for all relevant times; (d) any of the lawyers for Plaintiffs or Defendants; (e) any judge who is, or potentially may be, assigned to this matter; and (f) members of the immediate family of any excluded person.

Doc. No. 193-1, p. 3.

[¶ 8]    Rule 23 of the Federal Rules of Civil Procedure governs a district court's consideration of a motion for class certification. The decision whether to certify a class action is left to the district court's "broad discretion." Rattray v. Woodbury Cnty., Iowa, 614 F.3d 831, 835 (8th Cir. 2010). In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (quoting Miller v. Mackey Int'l, 452 F.2d 424, 427 (5th Cir. 1971)). "[T]he court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006) (quoting Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982)). The plaintiff bears the burden of satisfying Rule 23. Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994).

### I.    Clearly Ascertainable

[¶ 9]    Tigerswan argues the threshold inquiry is if the class is "adequately defined and clearly ascertainable." Doc. No. 199, ¶ 16. Plaintiffs argue this factor is included in the Rule 23 analysis.

Doc. No. 202, p. 3. Both parties rely on <u>Sandusky Wellness Ctr. LLC v. Medtox Scientific, Inc.</u>, 821 F.3d 992, 996 (8th Cir. 2016).

[¶ 10]   In <u>Sandusky</u>, the Eighth Circuit reviewed the various practices in other circuits for a heightened or separate requirement of ascertainability. <u>Id.</u> at 996. The court concluded the Eighth Circuit "adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class 'must be adequately defined and clearly ascertainable.'" <u>Id.</u> (quoting <u>Ihrke v. N. States Power Co.</u>, 459 F.2d 566, 573 n.3 (8th Cir. 1972), *vacated as moot sub nom.*, <u>N. States Power Co. v. Ihrke</u>, 409 U.S. 815, 815 (1972)). Then the court proceeded to analyze whether the class was ascertainable, but did not specify under which subsection of Rule 23(a) ascertainability falls. <u>See id.</u> at 996–97.

[¶ 11]   In <u>Sandusky</u>, the district court denied the class certification because the class was unascertainable. <u>Id.</u> at 997. The class was to include those who received a fax, and the district court concluded that would require it to have individual findings to know if the owner of the machine was the person who received the fax. <u>Id.</u> The Eighth Circuit found the class was ascertainable because the recipient of the fax was the number and fax logs objectively showed which numbers received the fax in question. <u>Id.</u> The Court will follow the Eighth Circuit and conduct an ascertainability analysis before proceeding to the 23(a) factors.

[¶ 12]   Plaintiffs do not argue how the members of the class would be identified, only that objective methods exist. Doc. No. 202, p. 4. Tigerswan argues the class is not sufficiently definite and would require individualized determinations. Doc. Nos. 199, ¶¶ 20–21; 205, ¶ 8.

[¶ 13]   Objective criteria are used to determine a class. <u>See</u> <u>Sandusky</u>, 821 F.3d at 997 (The court began its ascertainability analysis by looking at the "best objective indicator" for inclusion in the class.). Plaintiffs cite to this Court's recent certification of a class in <u>Hoffman v. Deja Vu Pizza</u>

LLC as an example of a class that included individualized considerations. Doc. No. 202, p. 4. However, in Hoffman the plaintiff specifically alleged a specific number for the potential class: 583 pizza delivery drivers who were employed during the time in question. Hoffman, No. 1:22-cv-00006, 2024 WL 3582363, ¶ 10 (D.N.D. June 6, 2024). The individual considerations were included in the analysis of damages, such as mileage records and signing arbitration agreements. Id. ¶ 30.

[¶ 14]  In the present case, Plaintiffs bear the burden and make no attempt to propose the number of people that would be included in the class, relying only on the estimated total number of protestors. Plaintiffs have no records to rely on, unlike Hoffman or Sandusky, to determine who was on the road during the times at issue with the purpose of expressing their views about DAPL. Geolocation alone would be insufficient proof that the individuals were traveling for freedom of speech purposes and not one of the many other reasons to use the highway, or to prove the individual was part of the protests. This is further complicated by the fact that some named plaintiffs were expressing their speech on the side of the road, while others were using the road to travel to work where they were expressing their speech. See Doc. Nos. 202-1–202-4. The individual weighing of each affidavit constitutes the exact opposite of the objective evidence required to establish a class.

[¶ 15]  Because inclusion in the class would require individualized determinations from the Court, the Court finds the class is not adequately defined or readily ascertainable. This alone would be enough to deny certification, see Sandusky, 821 F.3d at 996; however, for purposes of completeness the Court will include its analysis under the traditional factors of 23(a) and 23(b).

## II. 23(a) Analysis

[¶ 16] A class must satisfy four requirements: numerosity to the point that joinder is impracticable, common questions of law, the claims and defenses of the representatives are typical of the class, and representatives will fairly and adequately protect the class interests. Fed. R. Civ. P. Rule 23(a). "In common shorthand, the requirements for class actions under Rule 23(a) are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." Rattray, 614 F.3d at 835.

### a. Numerosity

[¶ 17]  To meet the numerosity requirement under Rule 23(a)(1), Plaintiffs must show the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Thousands of people participated in the protests and were kept from using the road. Therefore, assuming ascertainability, the class meets the numerosity requirement.

### b. Commonality

[¶ 18]  Plaintiffs argue the sustained road closure satisfies the commonality requirement. Doc. No. 193-1, p. 5. Tigerswan argues the injury of persons in the class turns on why they were using the road, not just that the road was closed. Doc. No. 199, ¶¶ 35–36.

[¶ 19] Commonality is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." Paxton v. Union Nat'l Bank, 699 F.2d 552, 561 (8th Cir. 1982). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Ebert v. Gen. Mills, Inc., 823 F.3d 472, 478 (8th Cir. 2016) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50 (2011)).

[¶ 20]   In this case, while the extent of the injury is different and how the persons were injured are unique, the actual alleged injury of violation of free speech is the same. Therefore, assuming ascertainability, the question of the road closure meets the commonality requirement. All class members would suffer the same alleged violation of their free speech.

### c.   Typicality

[¶ 21]   Plaintiffs argue the class representatives could not use the road for their speech and all claims arise out of the same facts. Doc. No. 193-1, p. 7–8. Tigerswan argues the use of the road is so vastly different between Plaintiffs that the claims are not typical of the class. Doc. No. 205, ¶¶ 12–13.

[¶ 22]   "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting Donaldson v. Pillsbury Co., 554 F.2d 825, 830 (8th Cir. 1977)). This burden is met so long as "other class members have claims similar to the named plaintiff." Id. (quoting DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." Id. "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." Elizabeth M., 458 F.3d at 787.

[¶ 23]   The last claim still available in this case is a violation of free speech against Tigerswan, namely that Tigerswan's reports to others resulted in the closure of the road and bridge that limited the protestors free speech. See Doc. No. 44, p. 34. Assuming ascertainability, members of the proposed class have the same claim of violation of free speech. Therefore, the class meets the typicality requirement.

### d. Adequacy of Representation

[¶ 24]  Plaintiffs assert they were all members of the class and plaintiffs' counsel are sufficiently experienced to handle this case. Doc. No. 193-1, p. 8. Tigerswan argues that the lack of evidence filed in the case proves lack of adequate representation. Doc. No. 199, ¶ 48.

[¶ 25]  To satisfy the requirement of Rule 23(a)(4), Plaintiffs must prove they will adequately represent the class. Rattray, 614 F.3d at 835. The adequacy of representation requirement is met "when the class representative is 'part of the class and possess[es] the same interest and suffer[s] the same injury as the [absent] class members.'" In re Baycol Prods. Litig., 593 F.3d 716, 724 (8th Cir. 2010) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997)). "The inquiry into adequacy of representation, in particular, requires the district court's close scrutiny, because the purpose of Rule 23(a)(4) is to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action." Rattray, 614 F.3d at 835. "The point of the adequacy inquiry is 'to uncover conflicts of interest between named parties and the class they seek to represent.'" Baycol, 593 F.3d at 725 (quoting Amchem, 521 U.S. at 625–26).

[¶ 26]  While the Court appreciates the long resumes of the Plaintiffs' counsel, the Court wonders if this case is of sufficient priority to them. Plaintiffs finally filed some evidence to prove the class certification, see Doc. Nos. 202-1–202-4, even though it was woefully late considering the age of this case and the requirement to meet their burden with evidence on the record for the motion to certify class. Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994). However, the Court has not found any conflicts of interest. See Baycol, 593 F.3d at 725. Therefore, assuming ascertainability, the class will be adequately represented.

### III. Predominance and Superiority

[¶ 27]   Beyond the four requirements of 23(a), the class action itself must satisfy at least one subsection of 23(b). Under 23(b)(3), Plaintiffs argue the common questions predominate this case and a class action is the superior method of adjudication. Doc. No. 193-1, p. 10.

### a.  Predominance

[¶ 28]  Plaintiffs argue the single sustained policy of closing the road is a common question that will be dispositive for all members of the class, and the question of the peacefulness of the protestors would also be common, though not dispositive. Id. at 11–12. Tigerswan argues individual questions would dominate and common evidence is not applicable to determine if individual rights to free speech were violated. Doc. Nos. 199, ¶¶ 52–57; 205, ¶¶ 9–11.

[¶ 29]  Predominance under 23(b) "is far more demanding" than the commonality requirement of 23(a). Amchem, 521 U.S. at 624. "Predominance gauges 'the relationship between common and individual questions in a case.'" Custom Hair Designs by Sandy v. Cent. Payment Co., LLC, 984 F.3d 595, 601 (8th Cir. 2020) (quoting Tyson Foods, Inc. v. Bouaphakeo, 557 U.S. 442 (2016)). The core of the requirement "is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." Sandusky, 821 F.3d at 998. A class may survive even if defenses or damages are unique to some class members. Tyson Foods, 577 U.S. at 453. Certification is not appropriate if liability "is a highly individualized question." Custom Hair, 984 F.3d at 601. An individual question arises "[i]f, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member." Avritt, 615 F.3d at 1029.

[¶ 30]  The claim before this Court is a violation of free speech. In order to prove that claim, a plaintiff must submit evidence that (1) their speech is protected, (2) if the forum is public or private,

and (3) if justification was reasonable. <u>Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.</u>, 473 U.S. 788, 797 (1985). While elements two and three may be established with common evidence, step one of the process is highly individualized. Even among the named plaintiffs, different evidence is required to prove their speech was protected. Ms. Cissy Thunderhawk wore anti-DAPL t-shirts to work and states that the road closure prevented her from going to work, and therefore impinged on her right to express herself. Doc. No. 202-4, ¶¶ 5–7. However, to prove her speech was protected, the Court would have to determine for each day of the closure that the road closure was the only reason she did not attend work, that she had the right to express herself in such a manner at work, and that the detours were not a sufficient alternative from where she lived to her place of employment. Wašté Win Young was an organizer of the largest protestor camp and the road closure made stay and travel to the camp more difficult "adding 45 minutes" to the trip to Bismarck. Doc. No. 202-3, ¶ 21. To establish a claim of impinged speech, the Court would have to determine that occupying the camp was a form of free speech that was protected and that the alternative routes to and from the camp were unreasonable under the circumstances. Based on the evidence before the Court, it is unclear if the detours for Cissy Thunderhawk are the same or different detours than for Wašté Win Young. Reverend John Floberg states he was stopped from traveling to the camps and the closure "and Morton County's refusal to allow any semblance of contact with law enforcement" kept his group from "fully reach[ing their] intended audience." Doc. No. 202-2, ¶ 11. To determine his claim, the Court would need to determine how much of the group's efforts were hindered by the road closure and how much was hindered by the lack of communication. Further, the Court would need more evidence on who the intended audience was, and how it would have been different than the event that was held. The Court is very familiar with the events of the DAPL Protests and media coverage was not an issue generally. These findings

again would be a significantly different analysis than traveling on the road for work or in order to live at the camps because of where people traveled from and what detours were available to them specifically. Lastly, José Zhagñay lived at the camps and traveled to get supplies. Doc. No. 202-1, ¶¶ 3–5. He specifically states that he walked the roadside to protest. Id. ¶¶ 9–10. To determine his claim, the Court would need to determine he had a right to stand on the side of the road to protest and that the roadside was a public forum. These are not questions answered for Cissy Thunderhawk, who protested at work and not the camps. Proving one claim will do nothing for the others. See Black Lives Matter L.A. v. City of Los Angeles, 113 F.4th 1249, 1259 (9th Cir. 2024) (holding that the claims were too fact-specific to predominate a class action).

[¶ 31]  Plaintiffs state subclasses are available, Doc. No. 202, p. 8, it is not the Court's job to change the certification in a manner that makes it fit, it is the Plaintiffs' burden to prove their class. The Court finds the common questions do not predominate and, because both are necessary, the Court declines to assess if a class action would be superior. Therefore, because common questions do not predominate, the class is not appropriate for certification.

## CONCLUSION

[¶ 32] The Court has carefully considered the entire record, the Parties' briefs, and the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Court finds the proposed class fails to meet the requirements of Rule 23. The Plaintiff's Motion to Certify Class for Conditional Certification is **DENIED**.

- 12 -

[¶ 33]  **IT IS SO ORDERED.**

DATED June 24, 2025.

_____
Daniel M. Traynor, District Judge
United States District Court